IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIE SPEED, | ) | CASE NO. 1:18CV1296 |
| | ) | |
| Petitioner, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| DOUGLAS FENDER, WARDEN, | ) | |
| | ) | **REPORT AND RECOMMENDA-** |
| Respondent. | ) | **TION RE PETITION UNDER 28** |
| | ) | **U.S.C. § 2254 FOR WRIT OF** |
| | ) | **HABEAS CORPUS** |

**I.**

Willie Speed filed a federal habeas petition to try to reverse decisions against him made by Ohio state judges.  He is not alone in this endeavor.  Prisoners nationwide file tens of thousands of habeas petitions each year.  Hundreds in our district alone.  That translates into over one-tenth of the civil cases filed each year in federal court.[1]  These numbers might reasonably lead someone to conclude that the federal judiciary serves as a higher authority to second-guess all the decisions state judges make in criminal cases.  But that's not the law's design.

---

[1] *See*, *e.g.*, https://www.uscourts.gov/report-names/federal-judicial-caseload-statistics, last accessed 7/12/2021; https://www.uscourts.gov/statistics/table/c-2/federal-judicial-caseload-statistics/2020/03/31, last accessed on 7/12/2021; https://www.uscourts.gov/statistics/table/c-3/federal-judicial-caseload-statistics/2020/03/31, last accessed on 7/12/2021; https://www.ohnd.uscourts.gov/sites/ohnd/files/Annual-Report-2019.pdf, last accessed 7/12/2021.

Federal and state judges alike have for good reason called the writ of habeas corpus the great writ.[2]  The writ of habeas corpus gives judges exceptional power to right wrongs in criminal cases, even to the point of overriding verdicts in cases tried to state judges or juries.  We need limits on this exceptional power, however, because we don't want cases to go on forever, and we don't want federal courts routinely overturning what state judges have already decided after a lot of hard work on their part.

Out of practical necessity then, Congress has enacted laws to explain how and when federal courts can grant the great writ.  Tens of thousands of prisoners each year may seek habeas relief in federal court to reverse decisions in their cases, but not every prisoner can make the necessary showing to warrant the exercise of that kind of judicial power.  As a consequence, federal courts end up granting only a small fraction of prisoner petitions.  Just as the law intended.

Speed uses his 28 U.S.C. § 2254 petition to try to do three things.  First, he wants to vacate a trial judge's decision from October 10, 2003, finding him guilty of one count of attempted rape, two counts of rape, three counts of kidnapping, four counts of impersonating a peace officer, and one count of possession of criminal tools.[3]  The trial

---

[2] *See*, *e.g.*, *Ex parte Watkins*, 28 U.S. 193, 201 (1830) (opinion delivered by Marshall, CJ); *Boumediene v. Bush*, 553 U.S. 723, 826 (2008) (Roberts, CJ, dissenting); *Cullen v. Pinholster*, 563 U.S. 170, 210 (2011) (Sotomayor, J., dissenting); *In re Campbell*, 874 F.3d 454, 463 (6th Cir. 2017) (per curiam); *Bacall v. Stoddard*, 716 F. App'x 502, 511 (6th Cir. 2017) (Daughtrey, J., concurring); *State v. Keenan*, 143 Ohio St. 3d 397, 38 N.E.3d 870, 872 (2015); *Scott v. Houk*, 127 Ohio St. 3d 317, 939 N.E.2d 835, 845-46 (2010) (Pfeifer, J., dissenting).
[3] ECF #9-2, at 17.

judge made her decision following a two-day trial to the bench.[4]  The guilty verdicts resulted in a sentence of nine years to life.[5]  Speed asks to be retried as a result of this claim.[6]

Second, Speed wants to vacate a second decision the trial judge made on October 10, 2003[7] after a separate hearing[8] by which she found Speed guilty of Ohio's sexually violent predator specification.  Speed asks for immediate release as redress for this claim.[9]

Third, Speed wants to vacate a decision the trial judge made on November 15, 2004 by which Speed was resentenced.[10]  Speed's overall sentence remained the same after resentencing.  Because he never directly appealed the resentencing order, Speed asks that that order be reentered so that he can directly appeal it.[11]

On June 6, 2018, I was assigned to this case by operation of our local rule[12] for purposes of referral, including this report and recommendation.  I find that Speed has not made the requisite showings to warrant federal habeas relief.  Even if I excuse his procedural missteps in Ohio courts, Speed still cannot show the cause and prejudice necessary to warrant reversing the state court decisions he challenges.  Accordingly,

---

[4] ECF #9-3, at 220-21.
[5] ECF #9-2, at 19, 105.
[6] ECF #1-1, at 54.
[7] ECF #9-2, at 18.
[8] ECF #9-3, at 234.
[9] ECF #1-1, at 57.
[10] ECF #9-2, at 105.
[11] ECF #1-1, at 59.
[12] Local Rule 3.1.

for the reasons I explain more fully below, I recommend that Speed's petition be denied and his case be dismissed.

## II.

***State Court Proceedings.*** Findings of fact and conclusions of law that the state judge issued at the end of 2015 provide an overview of the state court proceedings in Speed's case through that year.[13]  Some of those proceedings and others since 2015 warrant further description for purposes of adjudicating Speed's federal habeas petition.

On April 22, 2003, an Ohio grand jury indicted Speed on three counts of rape, three counts of kidnapping, four counts of impersonating a police officer, one count of aggravated robbery, one count of intimidation, and one count of possession of criminal tools.[14]   The prosecution later amended one of the rape counts to attempted rape.[15]  At the close of a trial to the bench in late August that year, the trial judge granted a directed verdict of acquittal on the aggravated robbery count, found Speed not guilty on the intimidation count, and found him guilty on the remaining counts.[16]  On October 2, 2003, the trial judge sentenced Speed to nine years to life, and found that the prosecution had met its burden of proving beyond a reasonable doubt Ohio's sexually violent predator specification.[17]

On September 30, 2004, the state court of appeals affirmed the convictions but vacated his sentence and remanded for resentencing because the trial judge had sentenced

---

[13] ECF #9-2, at 332-56.
[14] *Id.* at 1-13.
[15] *Id.* at 14.
[16] ECF #9-3, at 220-21; ECF #9-2, at 17.
[17] ECF #9-3, at 234, 246-47; ECF #9-2, at 19.

Speed on the four counts of impersonating an officer as if all four were felonies.[18]  The state conceded that two of them were misdemeanors.[19]  On November 15, 2004, the state trial judge resentenced Speed, made the corrections as to the two misdemeanor counts, but imposed the same overall sentence.[20]  Although Speed never appealed the resentencing order, the direct appeal of the original order convicting and sentencing him was still not definitively adjudicated at the time of his resentencing.  Within two weeks after the resentencing, Speed sought review in the Ohio Supreme Court of the order of September 30, 2004 by which the court of appeals had affirmed his convictions but remanded for resentencing.[21]  On March 2, 2005, the Ohio Supreme Court denied leave and dismissed Speed's appeal as not involving any substantial constitutional question.[22]

Speed wasted no time seeking other post-conviction relief from Ohio state courts. By mid-June 2004, he had already filed two separate petitions for post-conviction relief: one prepared by counsel[23] and one prepared pro se.[24]  Months before the court of appeals decided Speed's direct appeal and before she resentenced Speed, the trial judge had dismissed both post-conviction petitions.[25]  She later issued findings of fact and conclusions of law on her decision.[26]  On August 25, 2005, the court of appeals reversed

---

[18] *State v. Speed*, slip op. 2004-Ohio-5211, 2004 WL 2340183 (8th Dist. Sept. 30, 2004).
[19] ECF #9-2, at 74, 96.
[20] *Id.* at 105.
[21] *Id.* at 98.
[22] *Id.* at 100.  *State v. Speed*, 105 Ohio St. 3d 1452, 823 N.E.2d 457 (Table) (2005).
[23] ECF #9-2, at 106.
[24] *Id.* at 122.
[25] *Id.* at 181.
[26] *Id.* at 185.

on a 2-to-1 vote the trial judge's decision on those post-conviction petitions, and remanded for a hearing on the issue of ineffective assistance of trial counsel.[27]  The state unsuccessfully challenged this remand order.[28]

The post-conviction hearing on remand before the trial judge was delayed a decade for various reasons but primarily because of a conflict Speed's counsel had involving another case and one of Speed's possible alibi witnesses, Darren Monroe.  Speed's counsel also represented Monroe in an unrelated homicide case.  Speed's counsel withdrew from Speed's case, and the trial court appointed Speed new counsel, who then asked for a stay of the proceedings until Monroe's case was completed.[29]  The trial court then allowed Speed to amend his petition for post-conviction relief,[30] and eventually commenced the hearing on June 3, 2015 with Speed now with two attorneys by his side after his original lawyer had cleared the conflict and reentered the case.[31]  Speed's amended petition raised essentially the same grounds he now raises in the petition before me for federal habeas relief.

Following the hearing,[32] the trial judge denied Speed's petition for post-conviction relief.  On December 7, 2015, she issued findings of fact and conclusions of law in

---

[27] *Id.* at 246.  *State v. Speed*, slip op. 2005-Ohio-4423, 2005 WL 2046417 (8th Dist. Aug. 25, 2005).
[28] ECF #9-2, at 260-62.  *State v. Speed*, 108 Ohio St. 3d 1416, 841 N.E.2d 320 (2006).
[29] ECF #9-2, at 334-35.
[30] *Id.* at 291.
[31] *Id.* at 794–98.
[32] ECF #9-5, #9-6.

conjunction with her ruling.[33]  Speed appealed this ruling pro se to the court of appeals,[34] which dismissed his appeal for failure to file a timely, conforming brief.[35]  The court of appeals denied Speed's request for reconsideration,[36] and on May 31, 2017, the Ohio Supreme Court declined to accept jurisdiction.[37]

Speed attempted other avenues for his claims.  On September 3, 2015, Speed's lawyer filed a motion for leave to file a delayed appeal, making the same arguments Speed raises in Ground Two and Ground Three in his federal habeas petition.[38]  The court of appeals denied his motion.[39]  On December 7, 2016, Speed's lawyer filed a motion for relief from the December 7, 2015 judgment, making the same arguments Speed raises in Ground Three of his federal habeas petition.[40]  Both the trial court[41] and the court of appeals[42] rejected Speed's arguments.  One month after Speed filed his federal habeas petition, the Ohio Supreme Court also rejected this last attempt by him to seek post-conviction relief in Ohio state courts.[43]

***Federal Court Proceedings.***  On June 5, 2018, Speed filed in this Court a pro se

---

[33] ECF #9-2, at 332.
[34] *Id.* at 356.
[35] *Id.* at 503.
[36] *Id.* at 573.
[37] *Id.* at 611.  *State v. Speed*, 149 Ohio St. 3d 1418, 75 N.E.3d 236 (Table) (2017).
[38] ECF #9-2, at 264-77.
[39] *Id.* at 285.
[40] *Id.* at 613.
[41] *Id.* at 634.
[42] *Id.* at 701.  *State v. Speed*, slip op. 2018-Ohio-277, 2018 WL 565697 (8th Dist. Jan 25, 2018).
[43] ECF #9-2, at 792.  *State v. Speed*, 153 Ohio St. 3d 1432, 101 N.E.3d 464 (2018).

petition under 28 U.S.C. § 2254 for a writ of habeas corpus.[44]  He bases his petition on three grounds

> Ground One: "Petitioner was deprived of his constitutional right to effective assistance of counsel at trial under the Sixth and Fourteenth Amendments."[45]

Speed's supporting facts for Ground One focus on the failure of his trial counsel, Myron Watson, to put a person named Yolanda Humphrey-Monroe (Darren Monroe's wife) on the stand as an alibi witness.  In addition, Speed disagrees with the trial strategy his attorney used that led him to call no defense witnesses at trial. He also disagrees with the decision of his trial counsel not to interview or call Darren Monroe as a defense witness.[46]

> Ground Two: "Petitioners [sic] conviction of the sexually violent predator specification is not supported by sufficient evidence and, therefore, violates the Due Process Clause of the Fourteenth Amendment."[47]

Although Speed characterizes Ground Two as an evidentiary deficiency, he supports this claim by repeating a post-conviction legal argument his attorneys made on his behalf in the state courts.  His legal position is that Ohio law at the time of his sentencing did not permit the underlying crime on which he had just been convicted to be used as a predicate offense to support a finding of guilt on Ohio's sexually violent predator specification.[48]

> Ground Three: "Petitioners [sic] rights under the Sixth and Fourteenth Amendments were violated by virtue of counsels [sic] failure to notify him of his right to appeal after resentencing, resulting in the denial of the opportunity to appeal an adverse sentence."[49]

---

[44] ECF #1.
[45] ECF #1, at 5; ECF #1-1, at 41.
[46] ECF #1-1, at 41-54.
[47] ECF #1, at 6; ECF #1-1, at 55.
[48] ECF #1-1, at 55-57.
[49] ECF #1, at 8; ECF #1-1, at 57.

Speed supports Ground Three by asserting that his lawyer at the resentencing on November 15, 2004, assistant public defender John Martin, failed to file a direct appeal of that resentencing order or to advise Speed of his right to appeal.[50]  Speed alleges[51] that Martin asserted his own ineffectiveness a decade later at the hearing the trial court held on June 3, 2015[52] and June 17, 2015[53] to consider Speed's petition for post-conviction relief,[54] his amended petition for post-conviction relief,[55] and his pro se petition to vacate or set aside the judgment of conviction or sentence.[56]  At the 2015 hearing, Martin did refer to his possible past ineffective assistance, but premised his comments on the applicability to Speed's case of an opinion the Ohio Supreme Court issued two weeks after the trial judge had resentenced Speed.[57]  The state argued in response that the legal premise of Martin's argument was wrong, because the new Ohio Supreme Court opinion would not have applied to Speed's case.[58]  The trial judge ultimately agreed with the state on this point.[59]

## III.

*Proper Respondent for Petition.*  Before I begin my analysis of Speed's petition, I address one procedural issue regarding the respondent Speed names in his petition, Warden

---

[50] ECF #1-1, at 57-59.
[51] *Id.* at 59.
[52] ECF #9-5.
[53] ECF #9-6.
[54] ECF #9-2, at 106.
[55] *Id.* at 291.
[56] *Id.* at 122.
[57] ECF #9-6, at 20.
[58] *Id.* at 23.
[59] ECF #9-2, at 349-54.

Brigham Sloan.[60]  According to the website of the Ohio Department of Rehabilitation and Correction, the current warden of the Lake Erie Correctional Institution is Douglas Fender.[61]

Section 2243 of the United States Code, Title 28 provides that "[t]he writ, or order to show cause shall be directed to the person having custody of the person detained."  It further requires that "[t]he person to whom the writ or order is directed shall make a return certifying the true cause of the detention."  This statute is needed for habeas relief to work. The respondent must be the person with the ability to produce the petitioner before the Court.[62]

> The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is "the person who has custody over [the petitioner]."  28 U.S.C. § 2242; see also § 2243 ("The writ, or order to show cause shall be directed to the person having custody of the person detained").  The consistent use of the definite article in reference to the custodian indicates that there is generally only one proper respondent to a given prisoner's habeas petition.  This custodian, moreover, is "the person" with the ability to produce the prisoner's body before the habeas court.  *Ibid*.  We summed up the plain language of the habeas statute over 100 years ago in this way: "[T]hese provisions contemplate a proceeding against some person who has the *immediate custody* of the party detained, with the power to produce the body of such party before the court or judge, that he may be liberated if no sufficient reason is shown to the contrary."[63]

---

[60] ECF #1, at 1.

[61] *See* https://www.drc.ohio.gov/laeci, last accessed on 7/19/21.

[62] *See*, *e.g.*, *Cedeno v. Gray*, No. 1:17CV949, 2018 WL 10150931, at *1 (N.D. Ohio Mar. 27, 2018), *report and recommendation adopted,* No. 1:17CV949, 2019 WL 6841797 (N.D. Ohio Dec. 16, 2019), *appeal dismissed,* No. 20-3098, 2020 WL 1951668 (6th Cir. Mar. 12, 2020).

[63] *Rumsfeld v. Padilla*, 542 U.S. 426, 434-35 (2004) (quoting *Wales v. Whitney*, 114 U.S. 564, 574 (1885) (emphasis added) and citing *Braden v. 30th Jud. Cir. Ct. of Kentucky*, 410 U.S. 484, 494–95 (1973)).

Fed. R. Civ. P. 25 authorizes the remedy to rectify party alignment.  The rule allows the substitution of parties under various circumstances, such as when an interest is transferred or when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office.  Because I have no reason to question the accuracy of the ODRC's website, substitution of the proper respondent is appropriate.  Warden Fender is, therefore, the proper respondent in this case.

## IV.

***Federal Habeas Requirements Under 28 U.S.C. § 2254(d).***   In adjudicating Speed's petition for habeas relief, I must follow 28 U.S.C. § 2254, which, as part of the Antiterrorism and Effective Death Penalty Act of 1996, prohibits the issuance of a writ of habeas corpus unless certain requirements are met.  Section (d) of that statute provides the key roadmap:

> **(d)**  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> **(1)**   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> **(2)**   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[64]

Moreover, "a determination of a factual issue made by a State court shall be presumed to be correct."[65]   Speed has "the burden of rebutting the presumption of

---

[64] 28 U.S.C. § 2254(d).
[65] 28 U.S.C. § 2254(e)(1).

correctness by clear and convincing evidence."[66]

In addition to these statutory standards, the state has raised a number of procedural requirements that it believes bar Speed's claims. I discuss these below. In general, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus.[67] The exhaustion requirement is satisfied "once the federal claim has been fairly presented to the state courts."[68] To exhaust a claim, a petitioner must present it "to the state courts under the same theory in which it is later presented in federal court."[69] General allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present" claims that specific constitutional rights were violated.[70]

*Ground One.* Speed complained directly to the trial judge at the close of his trial about what he believed to be the ineffectiveness of his attorney. He didn't mince words, even though his attorney was with him.[71] But merely complaining about your lawyer's performance isn't enough to establish ineffective assistance of counsel and thus a violation of the Sixth Amendment.

After trial, he raised his ineffective assistance claim in several ways. The state correctly notes that Speed raised but one aspect of Ground One on direct appeal, namely,

---

[66] *Id.*

[67] 28 U.S.C. § 2254(b) and (c). *See also Baldwin v. Reese*, 541 U.S. 27, 29 (2004).

[68] *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987).

[69] *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998). *See also McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).

[70] *McMeans*, 228 F.3d at 681 (citing *Petrucelli v. Coombe*, 735 F.2d 684, 688–89 (2d Cir. 1984)).

[71] *See, e.g.*, ECF #9-3, at 243-45.

the ineffective assistance of his trial counsel during the hearing to determine whether there was evidence to sustain a finding that Speed is a sexually violent predator under Ohio law.[72] But Speed undeniably shored up this argument through his post-conviction petition that raised only one count for relief, but it is virtually identical to Ground One of his federal habeas petition.[73]  He also asserted ineffective assistance of trial counsel in his pro se petition to vacate or set aside the trial court's judgment of conviction and sentence.[74]  In addition, as I already noted, Speed's amended petition for post-conviction relief mirrors the three grounds he raises in his federal habeas petition, including Ground One.[75]  The state does not argue otherwise.

Moreover, no one disputes that the state trial court held an extensive hearing over the course of two days that included the issue of whether Speed's trial counsel was ineffective.  Both sides submitted briefs prior to the hearing, both sides presented witnesses during the hearing, and both sides submitted proposed findings of fact and conclusions of law after the hearing.  In short, the issue of ineffective assistance of counsel was plainly before the trial court.

By arguing from the start in its return of writ the merits of Ground One,[76] the state appears to agree that Speed has not defaulted on this particular claim.  The state argues default in the alternative,[77] but its position on default for Ground One is not persuasive in

---

[72] ECF #9, at 32.  *See also* ECF #9-2, at 33.
[73] ECF #9-2, at 110.
[74] *Id.* at 127.
[75] *Id.* at 291.
[76] ECF #9, at 29.
[77] *Id.* at 32.

light of the procedural history I outlined above as to Speed's claim of ineffective assistance of counsel.  On this point, for example, the state contends that Speed's amended post-conviction petition filed on September 15, 2014 "raised a semblance of the instant ineffective assistance of trial counsel claim."[78]  As I already noted, both the state trial court and the state court of appeals dealt with that "semblance," which turns out to be virtually identical to Ground One Speed raises here.

No one denies that Speed was unsuccessful in filing a conforming brief in the court of appeals, which meant neither the state court of appeals nor the Ohio Supreme had an opportunity to review the state trial judge's second set of findings of fact and conclusions of law on Speed's ineffective assistance claim.  But even if this should be cast as a procedural default, and thus a failure of presentment at least through Ohio's appellate courts, Speed's ineffective assistance claim still seems ripe for review here.

> If a habeas corpus petitioner is barred from presenting one or more claims to the state courts because of procedural default, he has waived those claims for purposes of federal habeas corpus review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error."[79]

"To establish cause a petitioner must present a substantial reason to excuse his procedural default."[80]  This substantial reason requires the petitioner to show that "some objective factor external to the defense impeded counsel's efforts to comply with the

---

[78] *Id*. at 33.
[79] *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).
[80] *Id*. at 161.

State's procedural rule."[81]  Speed contends he was unable to file a conforming brief in a timely manner because he was never served a copy of the court order requiring him to do so.[82]  The state does not challenge this point.

Speed is also prejudiced by any alleged constitutional error related to his ineffective assistance claim if proven true.  "[T]he prejudice component of the cause and prejudice test is not satisfied if there is strong evidence of a petitioner's guilt and a lack of evidence to support his claim."[83]  The evidence was mixed as to Speed's guilt,[84] and Speed presented considerable evidence at his post-conviction hearing in support of his claim of ineffective assistance of trial counsel.[85]  Again, the state does not challenge this point.

The more significant roadblock for Speed on Ground One is federal law and the absence of any constitutional violation—in other words, the merits of his claim under Ground One.  His petition discusses how he disagreed with his lawyer, and further describes the selection of witnesses, alibi defenses, and trial strategies his lawyer did or did not implement.  Beyond disagreements with his trial lawyer and the fact that he lost his case, Speed never explains how he was deprived of his Sixth Amendment or Fourteenth Amendment rights.

---

[81] *Murray v. Carrier*, 477 U.S. 478, 488 (1986) (citing as examples a showing that the factual or legal basis for a claim was not reasonably available to counsel or that some interference by officials made compliance impracticable).

[82] ECF #1-1, at 32.

[83] *Rust*, 17 F.3d at 161–62 (citing *United States v. Frady*, 456 U.S. 152, 172 (1982)).  *See also Maupin v. Smith*, 785 F.2d 135, 139 (6th Cir. 1986) (providing summary guidelines for defining the required showing of prejudice).

[84] *See, e.g.*, ECF #9-2, at 83-87 (discussion of the evidence in the case by the court of appeals).

[85] *See*, *e.g.*, ECF #9-5 and #9-6.

15

To establish ineffective assistance of counsel, Speed "must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."[86]  Speed must then "show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."[87]  This two-step showing, therefore, requires Speed to show that his trial lawyer's representation of him "fell below an objective standard of reasonableness."[88]  Then to show prejudice, Speed must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."[89]

A key additional restriction applies.  Section 2254(d) makes clear that Speed's application for a writ of habeas corpus cannot be granted unless the adjudication of his claims in Ohio's state courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

The Supreme Court has given us some guidance on this statute.  "A state-court decision will certainly be contrary to our clearly established precedent if the state court

---

[86] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[87] *Id.*

[88] *Strickland*, 466 U.S. at 688.

[89] *Strickland*, 466 U.S. at 694.  *See also Williams v. Taylor*, 529 U.S. 362, 390-91 (2000).

applies a rule that contradicts the governing law set forth in our cases."[90]   In another example it gave, the Court explained that "[a] state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent."[91]   On the other hand, "a run-of-the-mill state-court decision applying the correct legal rule from our cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause."[92]   In addition, "clearly established federal law" for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of the Supreme Court's decisions.[93]

The Supreme Court has also held that the requirement of an "unreasonable application" is separate and distinct from the statute's other requirements.   "Under § 2254(d)(1)'s 'unreasonable application' clause . . . , a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."[94]   The "unreasonable application of" the Supreme Court's holdings must not be merely wrong, and clear error will not suffice.[95] The state court's application must be "objectively unreasonable."[96]   To obtain federal

---

[90] *Williams*, 529 U.S. at 405.

[91] *Williams*, 529 U.S. at 406.

[92] *Id.*

[93] *White v. Woodall*, 572 U.S. 415, 419 (2014); *Howes v. Fields*, 565 U.S. 499, 505 (2012); *Williams*, 529 U.S. at 412.

[94] *Williams*, 529 U.S. at 411.

[95] *White*, 572 U.S. at 419; *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003).

[96] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003).

habeas corpus relief, a state prisoner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."[97]

Given these requirements, it is not surprising the Supreme Court has held that 28 U.S.C. § 2254(d)(1) "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court."[98]  Nor is it surprising that these standards are "difficult to meet."[99]  And, of course, as plaintiff and petitioner in this case, Speed carries the burden of proof to make these showings.[100]

I, too, must abide by these statutory limitations.  "Under § 2254(d), a habeas court must determine what arguments or theories supported or, . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court."[101]  Moreover, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."[102]  And "even a strong case for relief does not mean the state court's contrary conclusion was

---

[97] *Harrington v. Richter*, 562 U.S. 86, 103 (2011).
[98] *Williams*, 529 U.S. at 412.
[99] *Harrington*, 562 U.S. at 102.
[100] *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).
[101] *Harrington*, 562 U.S. at 102.
[102] *Pinholster*, *supra*, 563 U.S. at 181.

unreasonable."[103]  I also must abide by a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt."[104]

So, what must Speed show before this Court can grant his habeas application as to Ground One under the statute? He has several options.  The state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law; or the state court decided a case differently than the Supreme Court has on a set of materially indistinguishable facts; or the state court identified the correct governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of Speed's case;[105] or the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

It bears repeating: the petition's deficiency as to Ground One is that Speed has not demonstrated that his trial attorney's performance was unconstitutionally deficient.  Nor has he ever demonstrated that there is a reasonable probability that the result of his trial would have been different had he received what he believes to be proper representation.

The trial judge twice rejected Speed's ineffective assistance arguments.[106]  In both instances, Speed had counsel at his side.  In the second instance when Speed had two lawyers by his side,[107] the trial judge held a separate post-conviction hearing on this

---

[103] *Harrington*, 562 U.S. at 102 (citing *Lockyer*, 538 U.S. at 75).
[104] *Woodford*, 537 U.S. at 24 (citation and internal quotation marks omitted).
[105] *See Williams*, 529 U.S. 412-13.
[106] ECF #9-2, at 181, 188-89, 349.
[107] ECF #9-5, at 3.

question where Speed had years to prepare.  He presented two witnesses on his behalf (his two apparent alibi witnesses), and the state presented one (Speed's trial lawyer).  After hearing testimony, reviewing exhibits, reviewing the petition and the amended petition for post-conviction relief, and allowing the parties to submit proposed findings of fact and conclusions of law, the trial judge concluded that Speed had failed to show that his trial lawyer's performance was deficient and that any such deficiency prejudiced his defense. She found that the testimony of the first alibi witness was not reliable, and that the second alibi witness had only limited knowledge that was cumulative to that of the first alibi and known by trial counsel to be mistaken or false.[108]  In short, the trial judge applied the *Strickland* standard to the facts the parties presented to her, and she reasonably found that trial counsel's strategy was sound, that trial counsel's performance did not fall below an objective standard of reasonableness, and that Speed's defense did not suffer from ineffective assistance of counsel due to the decisions trial counsel had made.  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."[109]

After reviewing the record including the transcripts of the post-conviction hearing that dealt with Ground One of Speed's petition, I find no basis for calling into question, let alone reversing, the decision of the trial court judge on Ground One.  The trial judge's findings of fact and conclusions of law are lengthy and well-thought out, incorporate the

---

[108] ECF #9-2, at 349.
[109] *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

facts as presented at the hearing, set forth the applicable Supreme Court law governing ineffective assistance of counsel, and reasonably apply the facts as presented to her to the law.  For these reasons, I recommend that Speed's petition for post-conviction relief based on Ground One be denied.

*Ground Two.*  Since the trial judge first sentenced him on October 10, 2003, Speed has been trying to find different ways to challenge his conviction on the sexually violent predator specification under Ohio law.[110]  It is not so much the law itself that Speed seeks to challenge, but rather the consequences of the law.  Finding Speed guilty of the SVP specification under Ohio law required the trial judge to impose an indefinite sentence with a minimum term fixed by the court to life imprisonment for his rape convictions.  The statute requires the so-called "life tail" sentencing enhancement once the defendant has been found guilty of the SVP specification.[111]  It is the life tail that Speed is really challenging.

But Speed has another legal hurdle to confront: the federal law governing habeas relief.  The law governing 28 U.S.C. § 2254 applies equally to Speed's claims under Ground Two as it does to his claims under Ground One and Ground Three.  He still must show that the adjudication of his claim in Ohio courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[112]  Alternatively, Speed must show

---

[110] ECF #9-2, at 18.  *See generally* Ohio Rev. Code Ann. § 2971.01(H)(1)-(2) (West).

[111] *See*, *e.g.*, Ohio Rev. Code Ann. § 2971.03 (West).

[112] 28 U.S.C. § 2254(d)(1).

that the Ohio court decision he challenges "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[113]

The state argues that Speed defaulted on Ground Two for failure of presentment.  It argues that Speed never raised Ground Two on direct appeal.[114]  This position, though, is hard to reconcile with what is undisputed and what the state itself mentions in a footnote, namely, that the Ohio court of appeals affirmed Speed's convictions, including his conviction on the SVP specification.[115]  As the trial judge recognized in 2015, "On September 30, 2004, the Eighth District Court of Appeals affirmed Speed's convictions, including the finding that he was a sexually violent predator, which Speed, through counsel assistant public defender John Martin, challenged on direct appeal.  The Eighth District reviewed R.C. 2971.01(H)(1) and (2) and found the Court properly considered the instant rape charge and conviction, the victim's trial testimony, Speed's prior history of convictions for violent sex offenses, the Court Psychiatric Evaluation, and Speed's medium to high risk to commit a sexually oriented offense in the future in convicting Speed of the specification."[116]

Two years later when Speed's lawyer sought relief from the trial judge under Ohio Civ. R. 60(B)[117] and was denied that relief, the Ohio court of appeals was similarly clear.

---

[113] 28 U.S.C. § 2254(d)(2).
[114] ECF #9, at 36.
[115] ECF #9, at 36, n.14.
[116] ECF #9-2, 332-33.
[117] *Id.* at 613.

"Speed claim's [sic] that he was improperly convicted of the sexually violent predator specification.  However that conviction has already been affirmed by this court."[118]

The state is correct to distinguish the claim Speed raised on direct appeal from Ground Two.[119]  In the first instance, Speed claimed ineffective assistance of counsel with respect to the hearing on whether there was sufficient evidence to sustain a sexually violent predator finding.[120]  Here in Ground Two, Speed claims his conviction on the SVP specification is not supported by sufficient evidence and, therefore, violates the Due Process Clause of the Fourteenth Amendment.  But at least in the eyes of the Ohio courts, Speed did present the issue of whether he was properly convicted of the SVP specification, and Speed lost that issue on all three levels of Ohio's court system.

Like Ground One, it is again on the merits where Speed's claim based on Ground Two runs into trouble.  Other than his statement that somehow the SVP conviction violates the Due Process Clause of the Fourteenth Amendment, Speed never explains how this conviction or the manner by which the trial court reached it is contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court.  He also never explains how the SVP conviction was based on an unreasonable determination of the facts considering the evidence presented to the trial court on the SVP specification.  In fact, the state court of appeals reviewed the trial court's finding on sufficiency, which is the very issue Ground Two raises.[121]  It overruled Speed's assignment

---

[118] *Id.* at 706.
[119] *Id.* at 37.
[120] *Id.* at 33.
[121] *Id.* at 95.

23

of error on this point after reviewing the evidence and determining that the trial judge had decided the issues according to Ohio law.[122]

That in the end is Speed's insurmountable problem here.  He is challenging decisions by Ohio judges who interpreted Ohio law and then applied it, but Speed is doing so by referring solely to Ohio law (except for his passing reference to the Due Process Clause).[123]  In other words, Speeds disagrees with the way Ohio judges interpret and apply Ohio law, but that falls far short of what 28 U.S.C. § 2254 requires.  Moreover, nothing done by the trial judge in convicting Speed of the SVP specification was unfair or unreasonable—or in any way could be interpreted as a violation of Speed's due process rights.  She held a hearing on the specification, heard a broad range of evidence, considered it, heard arguments from counsel, and then made her finding based on proof beyond a reasonable doubt.[124]  I must defer to the state court's interpretations of state laws unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the Supreme Court.[125]  Nothing in the state SVP proceeding was out of line to raise constitutional due process concerns, and Speed's briefing suggests nothing to contradict this conclusion.  There was sufficient evidence for the trial judge to convict Speed of the sexually violent predator specification.

---

[122] *Id.* at 96.

[123] ECF #1-1, 55-57; ECF #13, at 7.

[124] ECF #9-3, at 234; ECF #9-2, at 18.

[125] 28 U.S.C. § 2254(d)(1).  *See, e.g., Harrington,* 562 U.S. at 99–100; *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone,* 535 U.S. 685, 693–94 (2002); *Williams,* 529 U.S. at 379; *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005).

Through his federal habeas petition, Speed is trying to do what the Supreme Court has admonished should not be done.  "[F]ederal habeas corpus relief does not lie for errors of state law."[126]  It is the standards of 28 U.S.C. § 2254 that I must follow in determining whether Speed's petition for federal habeas relief should be granted.  Speed fails to meet those standards on Ground Two.  For these reasons, I recommend that Speed's petition for post-conviction relief based on Ground Two be denied.

*Ground Three.*  Speed uses Ground Three as another way to challenge the life tail the trial judge included in calculating Speed's sentence according to Ohio law.  Speed claims his lawyer at his resentencing on November 15, 2004, assistant public defender John Martin, did not notify him after the resentencing of the right to appeal.  To this claim, Speed adds the clause: "resulting in the denial of the opportunity to appeal an adverse sentence."[127]

First off, this statement is incorrect.  To correct it, we would need to add the word "again" after the word "appeal."  Speed's direct appeal of his original sentence was not yet final at the time of the resentencing.  And the new sentence was no more adverse to Speed than the original sentence.  In fact, although the state judge resentenced Speed to the same period of imprisonment (nine years to life), she actually reduced his sentence on two misdemeanor convictions as the court of appeals had ordered in its remand order.[128]

---

[126] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (citing *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Rose v. Hodges*, 423 U.S. 19, 21-22 (1975) (per curiam)).  *See also Richmond v. Lewis*, 506 U.S. 40, 51 (1992).
[127] ECF #1-1, at 57.
[128] ECF #9-4, at 13.

Speed's lawyer even mentioned to the trial judge at the resentencing that he was in the process of preparing the direct appeal of the original adverse sentence to the Ohio Supreme Court to challenge the ruling by the court of appeals.[129]  He in fact made that filing two weeks after the resentencing hearing.[130]  Accordingly, to be clear, Speed had an opportunity to appeal his adverse sentence.  He just didn't have a second opportunity to do so, but the law does not require that.

Speed is using Ground Three for a different purpose.  He is using this claim to reassert a novel legal theory his lawyers unsuccessfully presented in post-conviction filings to Ohio courts a decade after the resentencing hearing.  A short historical review on Ohio law is needed to understand this legal theory.

On December 8, 2004, less than a month after Speed's resentencing (which, remember, included imposition of the life tail) and a week after Speed's lawyer appealed the original sentence to the Ohio Supreme Court, that Court decided a case captioned *State v. Smith*.[131]  In its 4-3 opinion in *Smith*, the Ohio Supreme Court rectified a conflict in the state appellate courts by ruling that the felony offense on which the defendant is being sentenced cannot be used to support an SVP specification alleged in the same indictment.[132]  This clarification was short-lived, however.  Four months later, the Ohio Legislature amended Ohio Rev. Code § 2971.01(H)(1) "to clarify that the Sexually Violent Predator Sentencing Law does not require that an offender have a prior conviction of a sexually

---

[129] ECF #9-4, at 8.
[130] ECF #9-2, at 98.
[131] *State v. Smith*, 104 Ohio St. 3d 106, 818 N.E.2d 283 (2004).
[132] *Smith*, 818 N.E.2d at 287–88.

26

violent offense in order to be sentenced under that Law."[133]  The new law became effective April 29, 2005—about two months after the Ohio Supreme Court denied Speed leave to appeal his original conviction and sentencing order.

In state post-conviction filings made in 2014 and in 2016, Speed's lawyers argued that, had they filed a direct appeal on Speed's resentencing order of November 15, 2004, they would have been able to argue *Smith*'s applicability to Speed's case—and thus open the door for a potential ruling that would have relieved the trial judge of the obligation to impose a mandatory life tail on Speed's sentence.[134]  They again made this argument at the post-conviction hearing conducted on June 3, 2015 and June 17, 2015.[135]  Also based on this legal theory, Speed's lawyer filed a motion for a delayed appeal in 2015 to challenge the November 15, 2004 resentencing order.[136]  The state court of appeals denied this motion.[137]  Speed sought no further review of this denial.

Speed is now trying through federal habeas law to resurrect this novel legal theory by recasting it as an ineffective assistance of appellate counsel argument.  This argument founders on procedural flaws.  Its merits also rest on dubious legal assumptions.

In *Rust v. Zent*, the Sixth Circuit applied Ohio law to explain how a prisoner can bring a claim of ineffective assistance of appellate counsel in Ohio courts.

---

[133] 2004 Ohio Laws File 163 (Am. Sub. H.B. 473).  The law was passed on December 15, 2004, approved on January 28, 2005, and became effective April 29, 2005.  This amendment was part of a larger bill captioned "Sex Offender Registration and Notification Law—General Amendments."  *See also* ECF #9-2, at 351.

[134] *See* ECF #9-2, at 297, 615.

[135] ECF #9-6, at 16-23.

[136] ECF #9-2, at 264-77.

[137] *Id.* at 285.

[C]laims of ineffective assistance of appellate counsel may be raised in an application for reconsideration in the court of appeals or in a direct appeal to the Ohio Supreme Court; and, where time periods for reconsideration in the court of appeals and direct appeal to the Ohio Supreme Court have expired, a delayed claim of ineffective assistance of appellate counsel must first be brought in an application for delayed reconsideration in the court of appeals where the alleged error took place, and, if delayed reconsideration is denied, the defendant must file a delayed appeal in the Ohio Supreme Court.[138]

Speed never took these steps, except to file a motion for a delayed appeal that was denied and never taken further.   Also as the state points out, Speed never sought to raise the ineffective assistance of appellate counsel through a motion filed under Ohio Civ. R. 26(B).[139] Under the doctrine of res judicata, Speed's default on his Ground Three claim meant he was barred from presenting this particular claim under Ohio's post-conviction relief statute.[140]  This failure of presentment in the state courts means his Ground Three claim is procedurally barred from being heard in this federal habeas proceeding.[141] Although he does not mention it, Speed cannot salvage his claims in Ground Three by arguing stay and abeyance, since the Supreme Court of Ohio does not allow delayed appeals on applications for reopening.[142]

Speed still has the possibility of demonstrating cause for the procedural default and

---

[138] *Rust*, 17 F.3d at 160.

[139] ECF #9, at 46.

[140] Ohio Rev. Code Ann. § 2953.21 (West).  *State v. Perry*, 10 Ohio St. 2d 175, 180, 226 N.E.2d 104 (1967).  *See also Coleman v. Mitchell*, 268 F.3d 417, 427 (6th Cir. 2001); *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

[141] *See*, *e.g.*, *Leroy v. Marshall*, 757 F.2d 94, 99 (6th Cir. 1985).

[142] *See* Ohio S. Ct. Prac. R. 7.01(A)(4)(c) ("[t]he provision for delayed appeal does not apply to appeals involving postconviction relief or appeals brought pursuant to App. R. 26(B)").

actual prejudice resulting from the alleged constitutional error.[143] But showing cause requires Speed to "present a substantial reason to excuse his procedural default."[144] This substantial reason requires him to show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."[145] Speed fails to point to any factor that fits this standard other than alleging the failure of his lawyer to inform him about his right to file a direct appeal of the resentencing order. This is insufficient. "Though ineffective assistance of counsel may constitute cause, . . . 'the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default.' "[146]

Furthermore, "[t]o constitute cause, that ineffectiveness must itself amount to a violation of the Sixth Amendment, and therefore must be both exhausted and not procedurally defaulted."[147] Speed's claim of ineffective assistance of appellate counsel fails on all these fronts, as noted above. On this point, Speed never explains why his lawyers waited a decade to claim ineffective assistance of appellate counsel as to Speed's resentencing. As I noted previously, in 2009 Speed's lawyer needed to withdraw due to a conflict created through his representation of one of the persons Speed had identified as an alibi witness. Nevertheless, the trial judge made sure Speed did not go unrepresented. The

---

[143] *Rust*, 17 F.3d at 160.

[144] *Id.* at 161.

[145] *Murray*, 477 U.S. at 488 (citing as examples a showing that the factual or legal basis for a claim was not reasonably available to counsel or that some interference by officials made compliance impracticable).

[146] *Rust*, 17 F.3d at 161 (quoting *Murray*, 477 U.S. at 486-87).

[147] *Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005).

trial judge appointed Speed new counsel the day his previous counsel sought to withdraw.[148]  She also continued the hearing on Speed's post-conviction petition until Speed's previous counsel cleared the conflict.  She also allowed Speed to be represented by two lawyers once his previous counsel cleared the conflict and rejoined the defense team.

Like the cause component, Speed also fails the prejudice component as to Ground Three.  As I noted previously, "the prejudice component of the cause and prejudice test is not satisfied if there is strong evidence of a petitioner's guilt and a lack of evidence to support his claim."[149]  My observation regarding the evidence of guilt as to Ground Two is of course the same for Ground Three.  The evidence of Speed's guilt was mixed.

Speed's greater challenge when trying to demonstrate prejudice to avoid defaulting on Ground Three is the evidence he has supporting this ground.  The state is not challenging Speed's claim that his lawyer did not advise him of his right to file a direct appeal of the resentencing order.  The state is not challenging Speed's claim that this failure would violate his constitutional right under the Sixth and Fourteenth Amendments, which afford the defendant the right to appellate counsel on direct appeal.[150]

Out of context, this error would appear to be of the sort that has a substantial and

---

[148] ECF #9-2, at 798.

[149] *Rust*, 17 F.3d at 161–62 (citing *Frady*, 456 U.S. at 172).  *See also Maupin v. Smith, supra*, 785 F.2d at 139 (providing summary guidelines for defining the required showing of prejudice).

[150] *See Ayers v. Hudson*, 623 F.3d 301, 308–309 (6th Cir. 2010) (quoting *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009), and *Mickens v. Taylor*, 535 U.S. 162, 166 (2002)); *Nichols v. United States*, 563 F.3d 240, 248 (6th Cir. 2009) (citing *Halbert v. Michigan*, 545 U.S. 605, 610 (2005)).

injurious effect on Speed's constitutional rights.  This type of unconstitutional prejudice and harm is what federal habeas relief is designed to address.[151]  But federal habeas law requires more analysis.

Generally speaking, federal habeas relief is not designed to give a petitioner redress for harmless error.[152]  Even when seeking federal habeas review of constitutional claims, the petitioner must show "actual prejudice."[153]  Should I be in grave doubt—in virtual equipoise— as to the harmlessness of an error that affects substantial rights, I should grant relief.[154]  This showing of prejudice is much like the second prong of the *Strickland* test for showing ineffective assistance of counsel.  And after all, Ground Three of Speed's petition is really an offshoot of Ground One, both claiming ineffective assistance of counsel.

The Supreme Court, however, requires a slightly different analysis when a petitioner claims prejudice caused by the lawyer's failure to file a notice of appeal.  "[W]hen counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal."[155]

As with all *Strickland* analyses, I must first determine whether the performance of

---

[151] *See, e.g.*, *Brecht v. Abrahamson*, 507 U.S. 619, 627 (1993); *Kotteakos v. United States*, 328 U.S. 750, 776 (1946).

[152] 28 U.S.C. § 2111.

[153] *Brecht*, 507 U.S. at 637.  *See also Doan v. Carter*, 548 F.3d 449, 459 (6th Cir. 2008); *Stewart v. Erwin*, 503 F.3d 488, 501 n.5 (6th Cir. 2007).

[154] *O'Neil v. McAninch*, 513 U.S. 432, 435, 445 (1995).  *See also Stewart*, 503 F.3d at 501–02.

[155] *Roe v. Flores-Ortega*, 528 U.S. 470, 484 (2000).

Speed's lawyer was constitutionally deficient.  If I answer this first inquiry in the affirmative, I then move on to the second determination regarding prejudice to Speed. Typical of *Strickland* analyses, whether Speed has made the requisite showing "will turn on the facts of a particular case."[156]

Speed states the following in his petition:

> Here, not only was counsel [assistant public defender John Martin] aware that Petitioner wanted to challenge the sentence (he and Petitioner discussed the sentence on numerous occasions, and Petitioner expressed his discontentment with the sentence and counsel expressed the same), but it is logical that any rational defendant would want to appeal a life sentence [sic] Flores-Ortega, supra [sic][157]

Speed then mentions that his lawyer admitted at the 2015 post-conviction hearing before the trial judge his own ineffectiveness for having failed to file an appeal or advise Speed of his appellate rights after the resentencing in November 2004.[158]  His lawyer said the following at the 2015 post-conviction hearing with regard to his own ineffectiveness:

> At the time of this re-sentencing, nobody was appointed – I had represented him up to then and still had the petition for post-conviction relief.  I was not appointed to take a new appeal from this sentencing.  Nobody was.  The journal entry reflects that there was no appointment of new counsel.
>
> And if an attorney had been – if an appeal had been taken, we had until December 15th to note that appeal, this case [*State v. Smith*] would have been controlling and Willie would have gotten that life tail removed in the subsequent appeal.[159]

Speed's lawyer then adds the following:

---

[156] *Flores-Ortega*, 528 U.S. at 485 (citing *Strickland*, 466 U.S. at 695–96).
[157] ECF #1-1, at 58.
[158] *Id.* at 59.
[159] ECF #9-6, at 18.

> If Gover [*State v. Gover*, 71 Ohio St. 3d 577, 645 N.E.2d 1246 (1995)] doesn't apply to this situation, then the alternative, to be quite candid about it, would be that I was ineffective, because I was an attorney and I could have jumped in and filed an appeal by December 15th and should have done so because of this intervening Ohio Supreme Court decision [*State v. Smith*].  And I'm not going to be disingenuous and sit here and argue to you my own ineffectiveness.[160]

*Gover* is an Ohio Supreme Court case from 1995 that defense counsel also argued was applicable.  The opinion in *Gover* sets forth the procedure to follow under Ohio law when the trial court gives the defendant notice of appellate rights but appointed counsel never receives the appointment notice.  That case is easily distinguishable from the facts in Speed's case, and is inapposite for federal habeas purposes.

These portions of the record provide us with important information if we assume them to be true and accurate.  Speed and his lawyer were dissatisfied with the sentence.  Speed acknowledges that he consulted with his lawyer "on numerous occasions" about the sentence.  Speed never asserts that he asked his lawyer to file a notice of appeal, and neither he nor his lawyer says anything about whether the topic of an appeal of the resentencing was even discussed explicitly.  We don't know how quickly these discussions occurred after the resentencing.  And we don't know whether the discussions were about the sentence Speed received at the resentencing hearing in November 2004 or the one he received at the original sentencing hearing in October 2003.  Recall that the overall sentences were the same.  This picture is also confused by the fact that at the time of the resentencing in November 2004, Speed's direct appeal of his original sentence was still

---

[160] *Id.* at 20.

ongoing.  Two weeks after the resentencing hearing, Speed's lawyer filed his notice of appeal in the Ohio Supreme Court[161] seeking to challenge the opinion of the Ohio court of appeals[162] that affirmed Speed's convictions but vacated the sentence and remanded for resentencing on the two misdemeanor counts.

In considering the statements in the record from Speed in his petition and from Speed's lawyer at the post-conviction hearing, I find that Speed and his lawyer consulted with one another about the sentence Speed received on November 15, 2004.  I also find that Speed did not specifically instruct his lawyer to file or not to file a notice of appeal of the November 15, 2004 resentencing order.

These findings take me to the next step in the analysis.  "In those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, we believe the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal."[163]  For this analysis, "consult" means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes."[164]

The Constitution imposes one general requirement on lawyers in the performance of their duties: they must make objectively reasonable choices.[165]  Accordingly, rather than

---

[161] ECF #9-2, at 98.
[162] *Id.* at 74.
[163] *Flores-Ortega*, 528 U.S. at 478.
[164] *Id.*
[165] *Id.* at 479 (citing *Strickland*, 466 U.S. at 688).

follow a bright-line test, I must continue the analysis under the following test: "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is a reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.  In making this determination, courts must take into account all the information counsel knew or should have known."[166]

In its holding, the Supreme Court cited *Strickland* for its focus on the totality of the circumstances.  "Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal."[167]

I find that the performance of Speed's lawyer on the issue of filing a notice of appeal of the resentencing order was not constitutionally deficient.  I base my finding on a number of undisputed facts in the record.

First off and perhaps most importantly, there were no nonfrivolous grounds on which to base an appeal of the resentencing order.  The opinion from the court of appeals vacating Speed's original sentence and remanding for resentencing is clear on its very first page: "CONVICTIONS AFFIRMED; SENTENCE VACATED; REMANDED FOR RESENTENCING."[168]  Those convictions included the conviction on proof beyond a

---

[166] *Flores-Ortega*, 528 U.S. at 480 (citing *Strickland*, 466 U.S. at 690).  *See also Smith v. State of Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 434 (6th Cir. 2006).
[167] *Flores-Ortega*, 528 U.S. at 480.
[168] ECF #9-2, at 74 (emphasis in original).

35

reasonable doubt finding Speed guilty of the sexually violent predator specification.  That was unequivocally clear in the order from the court of appeals opinion, from the body of the opinion itself,[169] and from Speed's notice of appeal from the trial court's "judgment of conviction entered on 10th day of October, 2003,"[170] which included the SVP conviction.[171]

Both Speed and his lawyer heard all of this repeated at the resentencing hearing from the trial judge herself.  "It's the Court's understanding after reading the decision, as a result of that, that Counts 8 and 9 were, in fact, misdemeanors of the 1st degree rather than felonies of the 4th degree.  So, Court's [sic] understanding that the mandate from the Court of Appeals references only those two counts."[172]  The prosecutor shared this view.  "Having read the opinion, it is my thought process that you are to sentence the Defendant again on Counts 8 and 9, only."[173]

The  trial  judge  acknowledged  that  "[d]efense  counsel  thinks,  I  believe, otherwise."[174]  Speed's lawyer unsuccessfully argued that the remand mandate was for sentencing de novo on all counts.[175]  But even Speed's lawyer acknowledged that the "life tail would still come into play because of the sexual violent predator spec."[176]  In other words, he knew that the court of appeals had affirmed all of the convictions, including the

---

[169] *Id.* at 96.
[170] *Id.* at 20.
[171] *Id.* at 24-25.
[172] ECF #9-4, at 3-4.
[173] *Id.* at 4.
[174] *Id.*
[175] *Id.* at 5.
[176] *Id.* at 8.

conviction on the SVP specification.  He also was aware that Speed's direct appeal from the original sentence was not yet final.  "I'll be taking direct appeal to the Ohio Supreme Court of our having lost in the 8th District Court of Appeals.  That's going to be filed this week."[177]

The trial judge then proceeded to impose the same sentence as before except on the two misdemeanor counts 8 and 9 for impersonating an officer.  For each of these counts, she sentenced Speed to six months to run concurrent with one another and concurrent with the other counts.[178]  A moment earlier, she noted that she had previously found Speed to be a sexual predator in the instant case.[179]

If we could transport ourselves back to that courtroom on November 15, 2004 right after the resentencing, it would be unreasonable to think that there was any talk at all about an appeal of the sentence the trial judge had just handed down.  After all, both Speed and his lawyer knew that the trial judge a moment ago had technically given Speed a better sentence on the two misdemeanor counts, and left the rest of the sentence the same.  They knew the court of appeals had affirmed all of Speed's convictions.  And they knew that they still had a chance with the direct appeal on the original sentence and the convictions, because that direct appeal was still alive and going shortly to the Ohio Supreme Court.  It would be unreasonable for them to think they had any nonfrivolous ground on which to appeal a sentence better than the one they already had on appeal.

---

[177] *Id.* at 8.

[178] *Id.* at 13.

[179] *Id.* at 12.

There is another important point to keep in mind.  Speed's lawyer acknowledged at the resentencing that the life tail was still in place and would remain so.  The life tail was a mandatory sentencing enhancement attached to Speed's SVP conviction.  Speed and his lawyer had to know that there was nothing they could do about that at the resentencing, because the court of appeals had affirmed Speed's SVP conviction.  Their only hope in getting the life tail reversed rested on getting the SVP conviction reversed.  And the only court that was able to do that in November 2004 was the Ohio Supreme Court where Speed's direct appeal was going next.  No new appeal on the new sentence could do that because Speed's SVP conviction was not at issue at the resentencing hearing.

Might Speed have reasonably demonstrated to his lawyer after the resentencing hearing that he was interested in appealing the new sentence? No, because he presumably was listening to what the trial judge, the prosecutor, and his lawyer were saying at that resentencing hearing.  He knew that the only thing happening at that hearing was imposition of a lighter sentence on the two misdemeanor counts.  The rest would remain unchanged.  And that rest had already been reviewed by the court of appeals and was on its way to the Ohio Supreme Court.  In short, Speed would have had to know when he heard the discussion in the courtroom that he already had an appeal going.  There was no reason to think Speed would be interested in having a second one where the only thing he could raise was the imposition of a new sentence on two misdemeanors that didn't matter to him in terms of how much time he would end up spending in prison.  He had no reason to ask his lawyer to file a new appeal when he knew it wouldn't matter anyway, and the one that did matter wasn't over yet.

There is no reason to doubt Speed when he states in his petition that he had expressed his discontentment with his sentence and that his lawyer expressed the same.  It is also logical to think that any rational defendant would want to appeal a life sentence.  That appeal—the one that challenged Speed's SVP conviction and the resulting life tail— was still pending at the time of his resentencing hearing.  Filing a new appeal on the new sentencing order wouldn't have changed a thing, since the SVP conviction and consequently the life tail were not at issue at the resentencing hearing.  Those were about to come before the Ohio Supreme Court.  That's what would have mattered most to Speed.

Let's move up the timeline to December 8, 2004.  That's the day the Ohio Supreme Court issued its opinion in *State v. Smith*.  Let's assume Speed's lawyer should have known about the holding in *Smith* as to how it could possibly affect his client's conviction under Ohio Rev. Code § 2971.01(H) and the resulting mandatory life tail Speed had received because of his SVP conviction.  Let's further assume that Speed's lawyer took a day to learn about the opinion after it was issued and a day to read and review it and to formulate his novel legal theory to benefit his client.  Ohio App. R. 4(A) gives a defendant 30 days to appeal an order that is final upon its entry.  The resentencing order was entered on November 19, 2004.[180]  That means Speed's lawyer still had about a week to file a notice of appeal on the resentencing order.

Does my finding—the performance of Speed's lawyer on the issue of filing a notice of appeal of the resentencing order was not constitutionally deficient—change under this

---

[180] ECF #9-2, at 104.

39

scenario?  No, my finding remains the same even after the *Smith* opinion.  Here's why.

*Smith*'s holding is crystal clear on one critical point.  It did not change or eliminate the mandatory life tail sentencing enhancement for certain felonies.  It merely clarified the definition of "sexually violent predator" under Ohio Rev. Code § 2971.01(H)(1).  In December 2004, Ohio Rev. Code § 2971.01(H)(1) defined a "sexually violent predator" to mean "a person who has been convicted of or pleaded guilty to committing, on or after January 1, 1997, a sexually violent offense and is likely to engage in the future in one or more sexually violent offenses."  *Smith* held that the conviction of the underlying sexually violent offense could not be the conviction required to support the sexually violent predator specification alleged in the same indictment.

Speed had two prior convictions for sexually violent offenses, but both pre-dated 1997.  Nevertheless, prior to *Smith*, both the trial court and the court of appeals read Ohio Rev. Code § 2971.01(H)(1) to allow Speed's rape convictions from 2003 to fulfill that statutory requirement in the definition of "sexually violent predator"—even though the rape charges and the SVP specification were alleged in the same indictment.

Let's return to December 2004.  After having read the opinion in *Smith*, Speed's lawyer still would have no reason to think that Speed would want to appeal the resentencing order or that there was a nonfrivolous ground to appeal it.  The resentencing order didn't touch the SVP conviction (or any other conviction for that matter), and the trial judge said as much during the resentencing hearing.  *Smith* might have affected the legal basis for determining whether a defendant is a sexually violent predator, but it didn't change the mandatory life tail enhancement once the defendant is found guilty of the SVP

specification.  Speed and his lawyer knew in December 2004 that the court of appeals had affirmed all of Speed's convictions, and the resentencing hearing didn't affect them a bit. The only forum that mattered at that point was the forum that might be able to address Speed's SVP conviction.  That forum was the Ohio Supreme Court.  That is precisely where Speed's direct appeal on his SVP conviction was at the time that Court issued its opinion in *Smith*.

Speed's lawyers directly appealed both his sentence and convictions.  The court of appeals vacated the sentence and affirmed the convictions.  From that point forward, his lawyers chose to focus on challenging the life tail as part of Speed's sentence instead of challenging the root cause of that mandatory sentencing enhancement—Speed's SVP conviction.

The Ohio Supreme Court's opinion in *Smith* possibly provided additional support to challenge whether Speed's SVP conviction met the requirements of Ohio Rev. Code § 2971.01(H)(1) as a matter of Ohio law.  Speed's lawyer explained in a state court filing made over a decade after the resentencing order that he could not have raised issues regarding the resentencing order in Speed's direct appeal to the Ohio Supreme Court because "those issues had to first be presented to the Eighth District on direct appeal before they could be taken to the Ohio Supreme Court."[181]  That direct appeal to the Ohio Supreme Court, however, did raise the issue of Speed's SVP conviction, which Speed also had previously presented to the court of appeals.

---

[181] ECF #9-2, at 617.

My finding that the performance of Speed's lawyer on the issue of filing a notice of appeal of the resentencing order was not constitutionally deficient obviates the need to consider the prejudice prong of this analysis.[182]  Nevertheless, I address the prejudice prong for the sake of completeness.

Assuming Speed's lawyer engaged in constitutionally deficient conduct in not discussing with him an appeal of the resentencing order, my analysis must move to another standard laid out by the Supreme Court.  "[T]o show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed."[183]  A presumption of prejudice arises, however, if counsel's alleged deficient performance arguably deprived the defendant of a notice of appeal.[184]  For this presumption to apply, the defendant must demonstrate that counsel's deficient performance "actually cause[d] the forfeiture of the defendant's appeal."[185]  To make the "but for" showing, "evidence that there were nonfrivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant in making this determination."[186]

The Sixth Circuit has articulated a rebuttable presumption in assessing whether the defendant "promptly expressed a desire to appeal": "if the period of time between when the defendant learned of the decision and when he or she attempted to appeal the decision

---

[182] *See Shelton v. United States*, 378 F. App'x 536, 539 (6th Cir. 2010) (citing *Regalado v. United States*, 334 F.3d 520, 526 (6th Cir. 2003)).

[183] *Flores-Ortega*, 528 U.S. at 484.

[184] *Id.* at 483.

[185] *Id.* at 484.  *See also Smith*, 463 F.3d at 435.

[186] *Flores-Ortega*, 528 U.S. at 485.

is greater than the period allotted by state law for the time filing of an appeal . . . the defendant fails to demonstrate that he or she 'would have timely appealed' the decision but for the counsel's deficient failure to notify the defendant of the decision."[187]

Under these standards, Speed can show no prejudice even if we assume his lawyer provided constitutionally deficient representation by not informing him of a possible appeal of the resentencing order. First, no nonfrivolous grounds for appeal exist with regard to the resentencing order, as I discussed above. Even were I to expand the record before me by conducting an evidentiary hearing,[188] nothing changes this fact.

Second, the record provides no suggestion that Speed ever tried to file a notice of appeal of the resentencing order or expressed a desire to do so. The lawyer who took over for Martin when he had a conflict filed a notice of appeal on the resentencing order on September 2, 2015 along with a motion for leave to file a delayed appeal.[189] She never explained in her motion why there was a delay of over a decade in filing that motion, but merely stated that Speed's was "an extraordinary situation that justifies a delayed appeal even though more than ten years has passed."[190] In the end, I find that Speed fails to meet both prongs of the test the Supreme Court has laid out for establishing ineffective assistance of appellate counsel.

*Postscript.* Despite the failure to meet the cause and prejudice test, the claims in Ground Three can still be salvaged through the test's one exception: "the circumstance in

---

[187] *Smith*, 463 F.3d at 435.
[188] ECF #13, at 1.
[189] ECF #9-2, at 264.
[190] *Id.* at 273.

which the habeas petitioner can demonstrate a sufficient probability that our failure to review his federal claim will result in a fundamental miscarriage of justice."[191]  For Speed, that miscarriage of justice is, of course, the fact that he continues to believe his sentence should not include the life tail.

Speed's lawyers attempted to obtain sentencing relief for Speed for over a decade in Ohio courts.  Their efforts were primarily focused on trying to overturn the life tail of Speed's sentence.  They were unsuccessful in the end.  They might well consider the result of their unsuccessful efforts a miscarriage of justice.  Ohio courts, however, have made a distinction between void and voidable sentences.[192]  In doing so, they included in the voidable category cases that involve sentencing errors resulting in the imposition of a sentence that exceeds Ohio's statutory limitations.[193]  This includes cases involving mandatory sentencing enhancements like life tails.  This means that some defendants in Ohio cases will never be able to obtain state court relief to correct sentencing errors.

Ohio courts have recognized that their jurisprudence in this area "can be unjust,"[194] and possibly lead to a defendant spending "unwarranted time incarcerated or under state supervision"[195]  Yet those same courts have decided that cases like *Smith*, which may provide some defendants with a possible window to seek relief from mandatory sentencing

---

[191] *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).  *See also Benton v. Brewer*, 942 F.3d 305, 307 (6th Cir. 2019) (identifying this exception as a showing of actual innocence and citing *Sawyer v. Whitley*, 505 U.S. 333, 338-39 (1992)).

[192] *See*, *e.g.*, *State v. Henderson*, 161 Ohio St. 3d 285, 162 N.E.3d 776 (2020).

[193] *State v. Stansell*, slip op., 2021-Ohio-2036, 2021 WL 2473818, at *3 (8th Dist. 2021).

[194] *Id.*

[195] *Henderson*, 162 N.E.3d at 792 (O'Connor, C.J., concurring in judgment only).

enhancements, should not apply retroactively[196]—even though an opposite holding would expand that window considerably.

A defendant like Speed who believes his case falls within that category of voidable sentences but still cannot find a way to correct the perceived sentencing error in Ohio courts will gravitate to federal habeas courts in an attempt to obtain sentencing relief elsewhere. But I am not in a position to judge whether the sentence Speed received, including the life tail, is fair or is compliance with Ohio law.  I am also not in a position to speculate why Speed's lawyers never brought the *Smith* opinion to the attention of the Ohio Supreme Court when Speed's direct appeal, which among other things challenged his SVP conviction, was pending there from later November 2004 through early March 2005.[197]  Or why Speed's lawyers never filed a motion to amend his memorandum in support of jurisdiction on his direct appeal to the Ohio Supreme Court to highlight the conflict the *Smith* opinion had possibly created with the rulings below in Speed's case.

My role is to adjudge Speed's federal habeas petition against the backdrop of federal habeas law.  When Speed attempts to seek sentencing relief under federal habeas law, he must meet the standards of that law.  He has not done so on Ground Three.  For these reasons, I recommend that Speed's petition for post-conviction relief based on Ground Three be denied.

---

[196] *See*, *e.g.*, *State v. Stansell*, 2014-Ohio-1633, 10 N.E.3d 795, 798 (2014).

[197] *See* Ohio S. Ct. Prac. R. 7.04(B) (allowing the filing of a citation to new relevant authority after the filing of the jurisdictional memorandum).

## V.

Speed disagrees with the way Ohio courts have interpreted the law that governs his criminal case.  The motivation underlying his disagreement is strong.  He believes the trial judge made the wrong decision to convict him of 11 crimes and then compounded the error by including in Speed's sentence a life tail.  Federal habeas corpus law, though, is not an avenue to contest what a prisoner might view as violations of state law.  "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal."[198] To be a successful federal habeas petitioner, therefore, Speed must show that his petition meets the requirements of 28 U.S.C. § 2254.  He has failed to do that.

Accordingly, I recommend that the named respondent be replaced by the name of the current warden of the Lake Erie Correctional Institution, Warden Douglas Fender.  I further recommend that Speed's petition under 28 U.S.C. § 2254 for a writ of habeas corpus be denied in its entirety and his case be dismissed.


Dated: July 20, 2021                                   s/ William H. Baughman, Jr.
                                                                   United States Magistrate Judge

---

[198] *Harrington*, 562 U.S. at 102–03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).  *See also Pollini v. Robey*, 981 F.3d 486, 493 (6th Cir. 2020).

**Objections**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days of service of this notice.  Failure to file timely objections within the specified time shall constitute a waiver of subsequent review, absent a showing of good cause for such failure.[*]

---

[*] *See* Local Rule 72.3(b); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).